**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RYAN OLOHAN,

                Plaintiff,

                - v -

GOOGLE LLC and TIFFANY MILLER, individually,

                Defendants.

Civil Action No.: 22-cv-10163

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff Ryan Olohan ("Olohan"), by and through his undersigned attorney, brings this Complaint against Defendants Google LLC ("Google") and Tiffany Miller ("Miller"), and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for sexual harassment, gender discrimination, race discrimination, and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

### JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is a diversity of citizenship among the parties and this action involves an amount in controversy in excess of $75,000, excluding interests and costs. Plaintiff resides in New Jersey and was employed in New York, New York. Defendant Google LLC is a Delaware-registered limited liability company with operations in New York, New York and, upon information and belief, Defendant Tiffany Miller resides in New York, New York.

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred

there.

4. Plaintiff will file a Charge of Discrimination, arising out of the facts described herein, with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. Upon receiving a Notice of Right to Sue from the EEOC, Plaintiff will seek leave to amend his Complaint to add Title VII claims against Defendant Google.

5. Within 10 days of the commencement of this action, Olohan will provide notice of this action to the New York City Commission on Human Rights and Corporation counsel, pursuant to New York City Administrative Code § 8-502(c).

## **PARTIES**

6. Plaintiff Olohan is a resident of the State of New Jersey and former Managing Director of Food, Beverage, and Restaurants at Google.

7. At all relevant times, Olohan was an "employee" of Google under all relevant statutes.

8. Google is a Delaware limited liability company with its principal place of business in Mountain View, California. At all relevant times, Google was registered in New York and permitted to do business in New York.

9. Google employed more than 14 employees throughout Olohan's employment.

10. Google conducted business at 76 Ninth Avenue, New York, New York, 10011, where it employed Olohan.

11. Defendant Miller was at all relevant times employed as a Google executive with the title of Director of Programmatic Media.

12. Upon information and belief, Miller resides in New York.

13. At all relevant times, Google was Olohan's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

### I. Olohan is Hired by Google and Excels in His Role

14. On or about January 6, 2007, Olohan accepted Google's employment offer for the position of Account Executive.

15. Olohan began working for Google in or about January 2007.

16. Olohan worked from Google's New York office located at 76 Ninth Avenue, New York, New York 10011.

17. Olohan exceled in his role and received positive feedback based on his performance, including "Exceeds Expectations" or "Strongly Exceeds Expectations" ratings in virtually every performance cycle since 2007.

18. The only performance cycles for which Olohan received a rating of "Meets Expectations" were those occurring after a promotion, due to company policy.

19. Olohan was promoted from Account Executive to Manager in 2007, to Team Manager in CPG in 2009, to Head of Industry, CPG in 2010, to Industry Director, Healthcare in 2013, to Managing Director, Healthcare in 2017, and to Managing Director - Food, Beverage & Restaurants in 2019.

20. Google recognized that Olohan's accelerated rate of promotion was due to his strong performance record.

21. Google awarded Olohan with the "Great Manager Honorable Mention Award" and "Impact Award."

22. Olohan was highly regarded by his peers and employees, and received Google's "Founders Award" for excellence every year since 2016, which included a minimum $250,000

yearly incremental equity grant.

23. Olohan was also recognized as an external thought leader and was named a "Top 40 Healthcare Transformer" in 2016 and "Top 50 Healthcare Influencer" in 2017 and 2018.

## II. Miller Gropes Olohan at a Google Event

24. In or about December 2019, Adam Stewart ("Stewart"), Vice President of Google CG&E (Consumer, Government & Entertainment), hosted a "CG&E Offsite" dinner at the restaurant Fig & Olive at 420 West 13th Street, New York, New York 10014 for the approximately 15 Google employees on the CG&E Management Team.

25. At the dinner, Miller approached Olohan and rubbed his stomach.

26. While rubbing his stomach, Miller told Olohan that he had "such a nice body."

27. Miller told Olohan that he was handsome, that her marriage lacked "spice," and that she knew he liked Asian women.

28. Miller is an Asian woman.

29. Miller was aware that Olohan's wife is an Asian woman.

30. Miller's behavior made Olohan extremely uncomfortable, and he immediately removed himself from the situation.

31. Olohan was uncomfortable addressing the incident with anyone at the dinner because many Google employees, including his supervisor, Stewart, had been drinking alcohol excessively.

32. Later that night, when Olohan suggested to coworkers that Miller may have had too much to drink, he was informed that her behavior was "Tiffany just being Tiffany."

33. At the time of the dinner, Olohan had been part of the team for approximately three weeks.

34. The week following the dinner, Olohan reported Miller's behavior to Purnima Menon, a member of Google's Human Resources.

35. Menon openly admitted to Olohan that if the complaint was "in reverse" — a female accusing a White male of harassment — that the complaint would certainly be escalated.

36. Menon also admitted to Olohan that Miller drinks too much alcohol.

37. Google did not interview Olohan or speak to him further regarding the incident.

38. Google did not inform Olohan that it would investigate the incident.

39. On information and belief, Google conducted no investigation regarding Olohan's complaint and Miller faced no formal repercussions.

### III.  Miller Retaliates Against Olohan After He Rejects Her Sexual Advances

40. Following Olohan's rejection of Miller's sexual advances and report of the incident to Human Resources, Miller began to retaliate against him by criticizing him to other coworkers and complaining to Human Resources on at least two occasions about alleged "microaggressions" from Olohan.

41. In both instances, Human Resources and other Google managers were present during the interactions between Olohan and Miller that formed the basis of Miller's complaints of alleged "microaggressions."

42. Google's Human Resources Business Partner, Jacky Schiestel ("Schiestel"), agreed that, in both instances, Miller was "being petty" and that there was no microaggression from Olohan.

43. Miller's retaliation against Olohan caused him increased anxiety that was well known by Human Resources. Schiestel noted that she understood that Miller's continued hostility towards Olohan made him feel like he was "on probation."

44. At another Google-hosted event, in December 2021, Miller was openly hostile to Olohan and drunkenly rebuked him at a table in front of numerous Google employees, loudly telling Olohan that she "disagreed with him 70% of the time" and "did not like him 70% of the time."

45. Several Google employees who were present during Miller's outburst were upset by the incident.

46. Noticing that she was intoxicated and causing a scene, two Google employees encouraged Miller to move to the other end of the table in an effort to stop her behavior.

47. Schiestel was informed of the incident by several Google employees the following day.

48. Schiestel, Stewart, and Miller each scheduled separate meetings with Olohan the following day to apologize for Miller's inappropriate behavior.

49. Miller apologized to Olohan and admitted that she was "very drunk."

50. Miller admitted that she had acted inappropriately and apologized for the incident to Stewart, who supervised both Miller and Olohan, and to Google's Human Resources.

51. Although Google was aware that Miller's continued harassment of Olohan stemmed from his rejection of her sexual advances, it again took no action.

52. In further retaliation against Olohan, Miller encouraged another Google employee, Stephanie Gatton, Administrative Business Professional to both Miller and Olohan, to complain to Human Resources that Olohan was not "inclusive," including in his planning an offsite event for his management team.

53. The offsite event plans were reviewed with, and approved by, Human Resources and Stewart in advance on two separate occasions.

## IV. Google Informs Olohan That There Are "Too Many White Guys" on His Team and Terminates His Employment

54. In or about February 2022, Stewart informed Olohan that there were "obviously too many white guys" on the CG&E management team.

55. In or about April 2022, Stewart and the CG&E Management Team held an offsite event that ended with a party at a karaoke bar.

56. Miller mocked Olohan when he arrived late to the event and asked if he was at the gym again, building his muscles.

57. At the event, Miller told Olohan that she knew he preferred Asian women to White women.

58. At the event, Miller again became visibly intoxicated and berated Olohan in front of other Google employees.

59. Olohan's coworkers witnessed Miller harassing Olohan.

60. Google took no action against Miller despite her ongoing harassment of Olohan.

61. In June 2022, Schiestel informed Olohan that an employee had complained to Human Resources about him.

62. Approximately three weeks later, Olohan informed Schiestel that the complaint was made at Miller's behest in retaliation for his refusing her sexual advances.

63. In or about June 2022, both Schiestel and Stewart strongly encouraged Olohan to hire only female applicants for an open management position on his team.

64. In or about July 2022, Human Resources and Stewart encouraged Olohan to terminate the employment of a male member of his team and to replace him with a female hire.

65. On or about August 5, 2022, Google terminated Olohan's employment.

66. On or about August 5, 2022, Google's Employee Investigations team, including

Carlos Sousa and Cecilia Alvarez, held a videoconference call with Olohan and Stewart.

67. During that call, Olohan was informed that his employment had been terminated because he was not "inclusive."

68. In response to Olohan's request during the call for specifics as to why Google believed he was not inclusive, Google's Employee Investigations team explained that he had shown favoritism towards high performers, which it considered "non-inclusive," and commented on employees' walking pace and hustle, which it considered "ableist."

## FIRST CAUSE OF ACTION
**(Gender and Race Discrimination in Violation of the NYSHRL)**

69. Olohan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

70. By the actions described above, among others, Defendants discriminated against Olohan by, *inter alia*, subjecting him to: (i) sexual harassment; and (ii) disparate treatment because he refused to succumb to Miller's sexual advances and because he is a White male.

71. Defendants violated the NYSHRL by subjecting Olohan to this behavior based, in whole or in part, upon his gender and race.

72. As set forth in detail above and herein, Google discriminated against Olohan and subjected him to adverse employment actions including, but not limited to, terminating his employment.

73. As a direct and proximate result of Defendants' unlawful employment practices, Olohan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

74. Accordingly, Defendants discriminated against Olohan because of his gender and race, in violation of his statutory rights under the NYSHRL.

75. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Olohan, entitling him to punitive damages.

## SECOND CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYSHRL)

76. Olohan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

77. Miller's actions and comments against Olohan taken cumulatively subjected him to inferior terms, conditions or privileges of employment.

78. Google was aware and on notice of Miller's actions and comments against Olohan by virtue of, among other things, his complaints to Human Resources.

79. Google took no action to remedy the hostile work environment despite Olohan's complaints.

80. Google admitted that it would have taken action to remedy the hostile work environment were Olohan not a White male.

81. Google thereby discriminated against Olohan on the basis of his gender and race or perceived race by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

82. As a direct and proximate result of the unlawful discriminatory conduct carried out by Google, Olohan has suffered, and continues to suffer, emotional distress for which he is entitled to an award of monetary damages and other relief.

83. Google's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Olohan, entitling him to punitive damages.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)

84. Olohan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

85. As set forth in detail above, Olohan reported Miller's actions to Google.

86. Defendants retaliated by subjecting Olohan to discrimination and adverse employment actions because of his actual and/or perceived gender and race in violation of Olohan's statutory rights.

87. Defendants were aware that Olohan opposed unlawful conduct and/or asserted his rights under the NYSHRL, including but not limited to, complaining of Miller's sexual harassment.

88. Olohan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

89. Accordingly, Defendants retaliated against Olohan in violation of his statutory rights under the NYSHRL.

## FOURTH CAUSE OF ACTION
### (Gender and Race Discrimination in Violation of the NYCHRL)

90. Olohan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

91. By the actions described above, among others, Defendants discriminated against Olohan by, *inter alia*, subjecting him to: (i) sexual harassment; and (ii) disparate treatment because he refused to succumb to Miller's sexual advances and because he is a White male.

92. Defendants violated the NYCHRL by subjecting Olohan to this behavior based, in whole or in part, upon his gender and race.

93. As set forth in detail above and herein, Google discriminated against Olohan and subjected him to adverse employment actions including, but not limited to, terminating his employment.

94. As a direct and proximate result of Defendants' unlawful employment practices, Olohan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

95. Accordingly, Defendants discriminated against Olohan because of his gender and race, in violation of his statutory rights under the NYCHRL.

96. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Olohan, entitling him to punitive damages.

## FIFTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYCHRL)

97. Olohan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

98. Miller's actions and comments against Olohan and Google's failure to act taken cumulatively show that Olohan was treated less favorably than other similarly situated employees.

99. Google was aware and on notice of Miller's actions and comments against Olohan by virtue of, among other things, his complaints to Human Resources.

100. Google took no action to remedy the hostile work environment despite Olohan's complaints.

101. Google admitted that it would have taken action to remedy the hostile work environment were Olohan not a White male.

102. Google thereby discriminated against Olohan on the basis of his gender and race

or perceived race by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

103. As a direct and proximate result of the unlawful discriminatory conduct carried out by Google, Olohan has suffered, and continues to suffer, emotional distress for which he is entitled to an award of monetary damages and other relief.

104. Google's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Olohan, entitling him to punitive damages.

## **SIXTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYCHRL)**

105. Olohan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

106. As set forth in detail above, Olohan reported Miller's actions to Google.

107. Defendants retaliated by subjecting Olohan to discrimination and adverse employment actions because of his actual and/or perceived gender and race in violation of Olohan's statutory rights.

108. Defendants were aware that Olohan opposed unlawful conduct and/or asserted his rights under the NYCHRL, including but not limited to, complaining of Miller's sexual harassment.

109. Olohan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

110. Accordingly, Defendants retaliated against Olohan in violation of his statutory rights under the NYCHRL.

### SEVENTH CAUSE OF ACTION
### (Aiding and Abetting in Violation the NYSHRL and NYCHRL)

111. Olohan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

112. New York Executive Law Section 296(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

113. New York City Administrative Code Section 8-107(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

114. Miller aided, abetted, incited, compelled, or coerced Defendants' unlawful conduct, including gender discrimination and retaliation, against Olohan by her conduct, action, and inaction, in violation of the NYSHRL and NYCHRL.

115. Miller was aware of her role as part of the unlawful activity that she assisted in, and knowingly and substantially assisted Google in its violations of the NYSHRL and NYCHRL.

116. As a direct and proximate result of Miller's conduct, Olohan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

117. Miller's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Olohan, entitling him to punitive damages.

### RELIEF

Plaintiff Ryan Olohan demands judgment in his favor and against Google LLC and Tiffany Miller as follows:

A. A declaratory judgment that the actions of Defendants complained of herein violate the New York State Human Rights Law and New York City Human Rights Law;

B. An injunction and order permanently restraining Defendants from engaging in any such further unlawful conduct;

C. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Olohan for all monetary and/or economic damages, including but not limited to past and future lost earnings;

D. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Olohan for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

E. An award of punitive damages, in an amount to be determined at trial;

F. Prejudgment interest on all amounts due;

G. An award of Olohan's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Ryan Olohan demands a trial by jury on all issues so triable of right.

Dated: November 30, 2022 Respectfully submitted,

/s/ Alex Rissmiller
Alex Rissmiller
Rissmiller PLLC
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 664-1412
arissmiller@rissmiller.com

*Counsel for Plaintiff Ryan Olohan*