

September 11, 2023

Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl St., Courtroom 15A
New York, NY 10007
(212) 805-0238

Re: *Ryan Olohan v. Google and Tiffany Miller*, SDNY Case No. 1:22-cv-10163

Dear Judge Subramanian,

We write on behalf of the Defendants opposing Plaintiff's Pre-Motion Request to Compel (Dkt. 33).

**Background on the Case and the Instant Dispute**

Plaintiff was terminated from his employment at Defendant Google on August 5, 2022, after an internal investigation into concerns raised about inappropriate conduct occurring at an event he hosted at his New Jersey beach house. The investigation concluded that Plaintiff violated multiple company policies. At the time, Plaintiff already was on a final written warning for multiple instances of prior misconduct and violations of policy in the workplace.

In this action, Plaintiff alleges that his termination was motivated by his race (white), gender (male), and retaliation. Plaintiff alleges that he was sexually harassed by Defendant Miller (who was junior to him and never his supervisor) at a restaurant in December 2019 when she allegedly "rubbed his stomach" and said "he was handsome," and that after he "immediately removed himself from the situation" that evening, he allegedly reported the incident to Google and Google failed to act. Miller also allegedly retaliated against him more than two years later by complaining about him to HR on two discrete occasions, by rebuking him in front of other employees on two occasions in late 2021 and April 2022, and by encouraging another employee to raise complaints about his beach house event, which he believes resulted in the investigation that led to his termination in 2022. Plaintiff also alleges that Google told him "there were too many white guys" on his team, and that he was "non-inclusive" and "ableist."

Notwithstanding the limited timeline of the events (December 2019-August 5, 2022) and the discrete nature of the conduct at issue, Plaintiff has sought broad document discovery spanning from 2007 to the present. While Defendants initially proposed that the appropriate end date for ESI be Plaintiff's termination date, in a good faith effort to compromise, Defendants have each agreed to search for and produce ESI through the date on which they first became aware of Plaintiff's legal claims—October 20, 2022 for Google's part, and November 30, 2022 for Miller's part (the "Notices of Claims").

As a threshold matter, the nature of this dispute is narrower than what Plaintiff represents in his letter. As Defendants understand it, the instant dispute concerns the appropriate end-date for the collection, processing, review, and production of ESI responsive to negotiated search terms, which Defendants have agreed to conduct in response to the majority of Plaintiff's 112 document discovery requests. Defendants have objected to Plaintiff's arbitrary demand that Defendants search through April 5, 2023 (more than four months beyond the filing of the complaint and eight months after his termination) when Plaintiff's counsel has failed to articulate a basis despite numerous meet and confers. For example, Plaintiff already has received in discovery documents that post-date the Notices of Claims when Plaintiff has articulated a rationale as to why certain searches were relevant and proportional to the needs of the case, such as personnel documents concerning Defendant Miller's workplace reviews, and Google has already produced a copy of its racial equity commitments, and has committed to produce documents concerning the company's diversity efforts—all of which post-date the Notices of Claims. Plaintiff's request to extend all ESI searches from the Notices of Claims to April 5, 2023, should be denied.



**Plaintiff's Extended Searches Are Highly Unlikely To Yield Relevant Documents and Not Proportional to the Needs of the Case.**

Discovery must be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). When assessing proportionality, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Marginally relevant information "is not proportional to the needs of the case because the information is not important to resolving the issues of liability and does not justify the investment of time" *Kaiser Aluminum Warrick, LLC v. U.S Magnesium, LLC.*, No. 22-CV-3105(JGK)(KHP), 2023 WL 2024620, at *2 (S.D.N.Y. Feb. 15, 2023) (denying motion to compel general information that, while relevant, was not proportional to the needs of the case). Further, "[t]he burden of demonstrating relevance is on the party seeking discovery." *Zanowic v. Reno*, No. 97CIV.5292(JGK)(HBP), 2000 WL 1376251, at *6 (S.D.N.Y. Sept. 25, 2000) (declining motion to compel because of "failure to explain the relevance of this information").

**Google's Position**: This is a single-plaintiff disparate treatment and retaliation case, alleging unlawful conduct by specific individuals, and based on discrete incidents. Google has already agreed to conduct searches across 24 custodians for several years, in some cases dating back as far 2002.

During the parties' meet and confer on August 25, 2023, Google requested Plaintiff identify any specific searches he proposes Google extend beyond the Notices of Claims. He refused to do so. Instead, he seeks to compel Google to collect, load, and search data for dozens of terms across 24 custodians' email boxes for an additional five (5) months—**10 years' worth of data**. This effort is simply not proportional to the needs of this case.

*First*, many of the negotiated searches are targeted to the discrete events in the Complaint, some of which occurred years prior to the Notices of Claims. Notwithstanding its objections, Google has agreed to broad ESI searches for those terms for a reasonable period of time after Plaintiff's termination. For example, Plaintiff alleges harassment occurred at a December 2019 dinner at Fig & Olive and at an off-site karaoke event in April 2022. In response, Google has agreed to search (Tiff* AND karaoke) and (Tiff* and fig) across 11 custodians for the time period November 1, 2019 – October 20, 2022. This is sufficient to capture any communications or documents relevant to those alleged events, and there is no reasonable basis for searching these after the Notices of Claims.

*Second*, several search terms at issue will likely result in a disproportionate number of irrelevant documents, and extending those searches beyond the Notices of Claims only amplifies that issue. Plaintiff has proposed, and Google has agreed to, broad searches such as (Ryan AND drink*), (Ryan AND alcohol), and (Tiff* and spice[1]). Terms like "drink" and "alcohol" frequently appear in communications having nothing to do with the allegations in the Complaint, particularly when applied to custodians who, like Plaintiff, worked in the Food, Beverage, and Restaurant division of Google's consumer sales organization. Ryan is a common first name, and the term "tiff", even when further restricted by search term connectors and proximity limiters, returns all emails on which Defendant Miller was copied or received that contain one of Plaintiff's generic search terms, such as "whites", "spice", and "wasted." These terms are unlikely to yield a high percentage of relevant documents in the first instance, but Google is nonetheless willing to review these results in a good faith effort to advance discovery. Requiring Google to review an additional 10 years' worth of data responsive to these terms is not proportional to the needs of this case. *See O'Garra v. Northwell Health*, No. CV 16-2191(DRH)(AYS), 2018 WL 502656, at *5 (E.D.N.Y. Jan. 22, 2018) (holding production of all files "would amount to a disproportional fishing expedition" given the discovery already produced in the case); *Black v. Buffalo Meat Serv.*, No. 15CV49S, 2016 WL 4363506, at *6 (W.D.N.Y. Aug. 16, 2016) (denying motion to compel on proportionality grounds where defendant already produced relevant documents and intended to produce more).

*Third*, communications concerning Plaintiff after the Notices of Claims will likely yield a high number of privileged communications. Plaintiff's argument that a categorical privilege log eliminates any burden ignores the fact that the data would need to be loaded, searched, and reviewed for relevance and privilege—all of which is burdensome in its own right, notwithstanding the logging of responsive, privileged communications. This is a quintessential needle-in-the-haystack effort that should be denied. *See Kay Beer Distrib. v. Energy*

---

[1] This term relates to an allegation that Miller once said in 2019 that her marriage "lacked spice."

LEGAL_US_E # 173198167.5



*Brands*, No. 07-C-1068, 2009 WL 1649592, at *4 (E.D. Wis. June 10, 2009) ("The mere possibility of locating some needle in the haystack of ESI…does not warrant the expense [Defendant] would incur in reviewing it.")

*Finally*, a media statement from Google that reiterated the statements made in the company's filed Answer (Dkt #13) does not render these ESI searches any more appropriate. Plaintiff asserts that non-privileged communications about the contents of the media statement are relevant, but he has not even alleged that any of the requested custodians made the media statement in the first place. And in any event, the media statement refers to the decision regarding Plaintiff's termination on August 5, 2022, which already is the subject of extensive ESI searches. Nothing relevant to the decision to terminate Plaintiff's employment happened *after* August 5, 2022, and Google has already agreed to search for documents and communications for more than two months beyond that date. Plaintiff's attempt to expand these searches is nothing more than a fishing expedition for reactions to Plaintiff's Complaint from many custodians that had nothing to do with the decision in the first place. This effort will not lead to any information concerning the reasons for his termination or the conduct that forms the basis of his legal claims, and therefore Plaintiff's request should be denied.

**Miller's Position**:  Plaintiff's statement that Defendants "refus[ed] to search for and produce documents post-dating Plaintiff's pre-litigation demand letter" (Ltr. at 1) is simply untrue as to Miller. Miller agreed to produce, and indeed has produced, documents that post-date the filing of the Complaint on November 30, 2022 after Plaintiff articulated why certain demands were relevant to Plaintiff's claims and proportional to the needs of the case as required by FRCP 26(b)(1). She has produced all non-privileged documents in her possession after November 30, 2022 concerning her workplace reviews, those mentioning Ryan Olohan, and those concerning public statements that Google or she had made through spokespersons denying the merits of Plaintiff's claims—all of which Plaintiff requested. However, given that Miller was never Plaintiff's supervisor, that Google fired Plaintiff on August 5, 2022, and that Miller's alleged wrongful acts occurred between December 2019 and June 2022, Miller objects to Plaintiff's blanket demand that she search ***her personal emails*** after November 30, 2022 for 28 search terms such as "sex!", "hot", "drink!", "alcohol" as they are not proportional to the needs of the case, but rather, a fishing expedition into her private, family life. Respectfully, Plaintiff's request that she perform these additional searches through April 5, 2023 should be denied.

*     *     *

Plaintiff cites a single case, *PRCM Advisers LLC v. Two Harbors Invest. Corp.*, to argue that "Defendants' post-complaint communications concerning the discrimination, sexual harassment, and retaliation alleged to have occurred pre-complaint are discoverable." (Ltr. at 1-2.) His authority is inapposite in several respects. *First*, the quoted passage upon which Plaintiff relies says nothing about "post-complaint" discovery, only "post-termination documents." 2022 WL 18027565, at *1 (S.D.N.Y. Dec. 30, 2022). Both Defendants have already agreed to produce documents and ESI that post-date Plaintiff's termination; the only issue is whether that post-termination period extends for a reasonable two to three months as opposed to a less reasonable eight-month period. *Second*, the *PRCM* case involved the termination of a management agreement; it was not a discrimination case in which a decisionmaker's contemporaneous intent was at issue. *Id.*; *compare McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what 'motivated the employer.'"). *Third*, the complaint in *PRCM* alleged tortious conduct that occurred after the termination of the management agreement at issue. 2022 WL 18027565, at *1 (alleging post-termination poaching of employees and unauthorized use of intellectual property). Here, no post-termination conduct is at issue, nor has any been alleged. *Fourth*, and most critically, the non-moving party in *PRCM* agreed to search and produce documents through the present, but ultimately refused to do so. *Id.* at *5. That is not the case here, where Defendant Google objected to the temporal overbreadth of Plaintiff's requests for production of documents in the first instance, and expressly limited the time periods for certain of Plaintiff's proposed ESI searches in each of its counterproposals. "Because the parties agreed to the discovery now at issue" in *PRCM*, the court's discussion of "post-termination documents" which Plaintiff cites in his letter is pure dicta, and does not compel the review, search, and production of the largely irrelevant discovery Plaintiff now seeks. *Id.* at *6 ("For the same reason Pine River's complaints about relevance and burden are largely beside the point.").

Defendants have already agreed to expansive discovery that pushes the bounds of what is proportionate to the needs of this single-plaintiff case, and Plaintiff has refused to articulate what searches, if any, will produce relevant information if extended beyond the Notices of Claims. For those reasons, Defendants respectfully request the Court deny Plaintiff's motion to compel.

3



Respectfully Submitted,

/s/ Emily R. Pidot

                                               /s/ Aaron M. Zeisler

Emily R. Pidot                                   Aaron M. Zeisler
Sara B. Tomezsko                             Meghan H. Sullivan
Matthew S. Aibel                              Zeisler PLLC
Paul Hastings LLP                           45 Rockefeller Plaza, 20th Floor
200 Park Avenue                             New York, NY 10111
New York, NY  10166                      *Counsel for Defendant Tiffany Miller*
*Counsel for Defendant Google LLC*

4