

5 PENNSYLVANIA PLAZA, 19TH FLOOR
NEW YORK, NY 10001
TEL 646.664.1412
WWW.RISSMILLER.COM

**Alex Rissmiller**
arissmiller@rissmiller.com

January 25, 2024

**BY ECF**

The Honorable Arun Subramanian, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

The Court will hold a conference on this dispute via Microsoft Teams on **January 31, 2024 at 11AM**. The parties should dial in by calling (646) 453-4442 and entering the Phone Conference ID: 730 359 1, followed by the pound (#) sign. Google should file any response to this letter by **January 30, 2024 at 5PM**.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: January 26, 2024

Re:   Olohan v. Google LLC et ano.; No. 22-cv-10163-AS

Dear Judge Subramanian:

I represent Plaintiff Ryan Olohan and write to request a conference with the Court seeking an order compelling Google to produce documents, conduct ESI searches, and designate a 30(b)(6) witness regarding its workplace investigation of individual Defendant Tiffany Miller. Before seeking the Court's intervention, I conferred with defense counsel telephonically for approximately 45 minutes at 11:30 am on January 11, 2024, and for approximately 30 minutes at 12:00 pm on January 25, 2024, as required by Your Honor's Individual Practice 5(B) in a good faith effort to resolve this dispute. The other participants of those conferences include Sara Tomezsko and Matthew Aibel. I have informed those participants that, due to the impasse reached on this issue, Plaintiff would be requesting a conference with the Court.

**Background**

In this employment discrimination action, Mr. Olohan brings claims for sexual harassment against Ms. Miller, which include groping and sexually suggestive comments at Google events. *See* ECF No. 1 ¶¶ 25-30, 44, 49-51. In March 2023, Google concluded its investigation into Ms. Miller's conduct, finding that, separate from any interaction with Mr. Olohan, she had "made inappropriate comments about several junior male team members' appearances" and "put[] [her] head on the shoulder of a junior team member and invited him to [her] hotel room," but only issued her a written warning. *See* Exhibit 1. Although those incidents occurred in 2017 and 2021, another former Google employee has come forward confirming that Ms. Miller's inappropriate touching of junior team members and sexually suggestive comments at Google date back over a decade. Ms. Miller remains employed by Google.

**Google's Privilege Claim Over Investigation Documents and ESI**

Although Google has produced the concluding document of its investigative process, the written warning referenced above, it continues to withhold 32 investigation documents and has redacted numerous additional documents on the basis of attorney client and work product privilege. *See* Exhibit 2. Google contends that because the investigation was initiated "at the

request" of its in-house counsel, all resulting documents constitute attorney work product. But a lawyer's initiation of an investigation is not sufficient to confer work product protection over all resulting documents — the documents at issue must have been "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A); *see also In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923, 2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017) ("[T]he doctrine is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather the materials must result from the conduct of 'investigative or analytical tasks to aid counsel in preparing for litigation.'") (quoting *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393-94 (S.D.N.Y. 2015)).

The party asserting the work-product privilege "bears the heavy burden of establishing its applicability." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). Google has not met this burden because it has not established that its investigation was conducted for the purpose of obtaining legal advice, as opposed to business purposes such as making personnel decisions, which is suggested by employee relations' conducting the investigation and the resulting warning document. Many of the withheld communications do not involve any lawyer and were disclosed to Ms. Miller, waiving any purported work product protection. *See* Exhibit 2 at 2-9, 11. Ms. Miller has not, however, produced any investigation-related documents beyond the written warning.

Barring privilege, investigation documents pertaining to other sexual harassment allegations against Ms. Miller are discoverable. *See Leibovitz v. New York City Transit Authority*, 252 F.3d 179, 190 (2d Cir. 2001) ("[W]e recognize that evidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination."). Withholding those documents — including the names of the victims and the harassment alleged — prevents Mr. Olohan from obtaining related evidence corroborating of his own sexual harassment claims. *See Babbitt v. Koeppel Nissan, Inc.*, No. 18-CV-5242, 2019 WL 3296984, at *7 (E.D.N.Y. July 23, 2019) (ordering that "defendants disclose the names of the individuals interviewed for the investigation, '[t]o ensure that Plaintiff will have full access to the facts underlying this action.'") (quoting *Robinson v. Time Warner, Inc.*, 187 F.R.D. 144, 148 (S.D.N.Y. 1999)). Mr. Olohan thus has a "substantial need for the materials" and, as contemplated by Fed. R. Civ. P. 26(b)(3)(A), "cannot, without undue hardship, obtain their substantial equivalent by other means." As the investigation documents are likely to reflect when Google learned of the harassment and any remedial steps it took, they are "crucial to the determination of whether the defendant could be held liable for the acts alleged, or carr[y] great probative value on contested issues." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010). Because the other claims of harassment mirror Mr. Olohan's, the investigation documents also hold substantial probative value as to his own harassment claims and are therefore discoverable.

Were the investigation documents privileged as attorney work product, Google nevertheless waived that privilege by asserting a *Faragher/Ellerth* defense in its Answer. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) ([The *Faragher/Ellerth*] "defense consists of two elements: that (1) the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by

the employer or to avoid harm otherwise."); *see also* ECF No. 13 at 11 (asserting in tenth affirmative defense that "Google exercised reasonable care to prevent and correct promptly harassing behavior, if any, and Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities …"). By asserting this defense, Google has "placed the reasonableness of their investigation directly in issue, and [is] therefore obligated to turn over 'any document or communication considered, prepared, reviewed, or relied on by in creating or issuing the [investigatory report].'" *Williams v. Fire Sprinkler Assocs. Inc.*, No. 15-CV-3147, 2017 WL 1155771, at *11 (E.D.N.Y. Mar. 27, 2017) (quoting *Angelone v. Xerox Corp.*, No. 09-CV-6019, 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011)). Given the waiver of work product privilege, the Court should order that the investigation documents be produced. *See Malone v. Town of Clarkstown*, No. 19-CV-5503, (S.D.N.Y. Dec. 23, 2020) (holding that investigation documents be produced following in camera review because employer's *Farragher/Ellerth* defense placed reasonableness of the employer's investigation at issue).

In response to Mr. Olohan's document requests pertaining to the investigation, Google agreed only to produce "responsive ESI pursuant to the parties agreed upon search terms." Exhibit 3. Because those search terms were agreed upon before Defendants disclosed the existence of the investigation into Ms. Miller, however, they did not include relevant custodians. Plaintiff has therefore requested that Google conduct additional ESI searches with the custodians Google has since identified through interrogatory responses as having knowledge concerning the investigation, using name search terms (Tiff*, Miller, TM) to be further narrowed as appropriate after seeing an initial "hit" report and confined to the limited investigation time frame. Google has declined at this time to conduct additional ESI searches and will not designate a 30(b)(6) witness to testify regarding the investigation or conduct investigation-related ESI searches on the same privilege grounds.

**Conclusion**

For these reasons, Plaintiff requests a conference with the Court to address his request for an order compelling Google to (i) produce the investigation documents and previously redacted portions of documents pertaining to the investigation, (ii) submit the investigation documents for the Court's in camera review of the purported attorney work product to the extent it finds that privilege has not been waived, (iii) conduct ESI searches pertaining to the investigation, (iv) designate a 30(b)(6) witness to testify on its behalf regarding the investigation, and (v) any further relief that the Court deems appropriate.

Respectfully submitted,

*/s/ Alex Rissmiller*
Alex Rissmiller

cc:   Counsel of record (via ECF)